The second case will be John Doe's 1 and 2 v. Governor of Pennsylvania. Good morning. Mr. Porter? Yes, indeed. How are you, sir? Good morning, Your Honor. My name is Jay Porter. I'd like to reserve five minutes for rebuttal, if I may. Sure. And may it please the Court, I'm here today representing two law-abiding, responsible citizens of Pennsylvania in this challenge to Section 6105c4 of Pennsylvania's Uniform Firearms Act. Section 6105c4. Isn't this case really moot? No, Your Honor. Because the federal government has now said that he will recognize the Pennsylvania determination that an individual who has been mentally ill can recover to the point to have the right to have a firearm. And the federal government has said we will recognize that Pennsylvania determination. So what are we arguing about? Well, there are two things, Your Honor. First of all, the case is not moot because Zinnerman v. Birch makes it clear that you have to have a pre-deprivation hearing before a deprivation of this magnitude. So that alone means the case is not moot. But this is an emergency determination. Of course, Your Honor. That someone needs three days hospitalization for mental illnesses as a threat of harm to himself or to others. And how can you have a pre-detention determination when it is an emergency situation like that? Well, because, Your Honor, we're not asking for a pre-detention hearing. What we're asking for is a pre-deprivation of the Second Amendment right. So is this going to be a pre-PICS hearing? It wouldn't have to be into PICS. It would be before the automatic taking away of the Second Amendment right that 6105C4 does with respect to Section 302. Walk that through us for me. You have an individual, call him John Doe III, who shows up and John Doe III has his 302 hearing. Go from there. No 302 hearing. There is no 302 hearing, Your Honor. There is no 302, okay. That's right. So why don't we start with the 302 process itself. I think this may illuminate some. 302, due to some exigent circumstance, you're taken to the hospital. John Doe III presents at the hospital. A psychiatrist evaluates him or a doctor evaluates him and says, I believe that you need to stay here for evaluation and treatment. That's what I was calling a hearing. Right. And certifies you as committable at that point. But it is not a hearing, Your Honor. My bad. And the patient is potentially a harm to himself or to others. The analysis. It's got to be done quick. Yes, Your Honor. The pertinent analysis is exigent because is the patient a danger to himself or to others? So the person is temporarily detained pursuant to 302. During that process, it is determined that he is not, in fact, a danger to himself or others. If he were, then the government may then petition for further commitment pursuant to Section 303. 302 lasts for up to 5 days. Up to 120 hours, Your Honor. Yes, that's correct. Although one of our plaintiffs never even went, he went to the hospital and then left. He never was detained at all. But I want to, it's very important. We've got to address the issue of the exigency. I'm sorry, Your Honor. He left against advice. He did, but he left. Your Honor, the exigency question is critical to the disposition of this case. It is an exigent circumstance where you must make a determination for purposes of the evaluation, is this person a potential danger to himself or others? The permanent taking away of the Second Amendment right that follows, however, is not an exigent circumstance. The case that the State relies on, national amusements, makes that abundantly clear. When you... But when would you have that hearing? Well, you could have the hearing any time. First of all, if the person, the question that the State's interest in this case, pursuant to Matthews v. Eldridge, is that you don't want a dangerous person to have a firearm. So the permanent state police gets the list of people who have been certified committable under 302. They get those as soon as they're entered, right? Yes, Your Honor. Right. Tell us, once the PSP has that information about John Doe 1 and John Doe 2 and other John Does, what do you want them to do? Well, we're way ahead of ourselves here, Your Honor, because that whole aspect is irrelevant, because 6105c4 acts immediately. The moment, according to Pennsylvania law, the moment that John Doe 3 presents to the hospital and is certified committable by a treating physician, 6105c4 acts immediately. Well, you don't want to have a hearing then. You don't have to have a hearing then. You have to take 302 out of 6105c4. There are no due process protections for a 302 commentee. Therefore, you cannot take it out altogether. I want to write 302 out of section 6105c4. But the fact that a person is found not to need further 120-day hospitalization does not mean that during the original five-day period he was not, in fact, a threat of danger to himself or to others and could not, if he were put in a similar situation, become a threat again. And that's one of the reasons that this applies to people who have had mental health problems, that they can become so upset that they're going to kill themselves. So, Your Honor, if I may, you're saying upset once, upset forevermore. And that's not the law. And that's not the medicine. And that's not the fact. And the Supreme Court is very clear. Okay. Okay. But it is a problem that can persist. And if after, it does not mean that during the five days there was not a necessity to hospitalize that person, to treat them. And now that we have the remedy under Pennsylvania law, and now that we have the remedy under federal law, isn't there, is there not a sufficient post-deprivation hearing to satisfy the Constitution? Not at all. For at least two reasons. The first reason, Your Honor, is under Beers. Under Beers, which you wrote, which I would argue applies to 303 and 304 comitees, because the 302 question was not answered in that case, because the gentleman had been 303 and 304. He had a hearing. He was adjudicated mentally incompetent, and that extinguished his Second Amendment rights. This post-deprivation remedy that Pennsylvania touts is illusory. Once your Second Amendment rights are gone, Benderup and Beers seem to be sane. Once your Second Amendment rights are gone, they are gone. Now, you may get the privilege to... ...through the Pennsylvania process. Their complaint was that, sure, we can get a gun in Pennsylvania, but the federal law prevents us, and no one will sell us a gun. Well, now, the federal government has said, OK, when we have a hearing and determine that this person is no longer a threat, we will recognize the Pennsylvania determination. Yes, Your Honor, but again, importantly, that's a matter of legislative grace. It is not a matter of restoration of Second Amendment rights. There's a question outstanding in both of those cases. Let's suppose that you do have your rights restored pursuant to this post- deprivation remedy. I go and I have my rights restored, and then the law changes again in Pennsylvania in some other way. Do I have standing to assert Second Amendment rights? The answer under Beers and Benderup is I do not. Let me go back for a second. If you were writing a statute, how would it read? It would read virtually the way it's written now, except it would have 302 out of 6105-64. That's what I thought you said. You aren't asking for a pre-deprivation hearing. You're trying to get 302 out of the statute altogether. Well, it has to be, because the reason is, is because since it lacks a pre-deprivation hearing, it lacks the due process necessary. This is why I gave you the example that the state police gets these reports on John Doe 1, 2, and et cetera, et cetera. Right. You're not arguing for a deprivation hearing at that point? I'm arguing for it. Because until they put that information in the PICS system and in the federal PICS system, there's no deprivation. Oh, no, you're right. The deprivation is instantaneous by operation of law under 6105-C-4. You're saying it occurs by operation of law? Instantaneously. The moment you're certified as committable. 6105-C-4 is not ambiguous. It's simply unconstitutional. Okay, so notice of it is not given until- There's no notice. First of all, no notice whatsoever that you leave your Second Amendment rights. Notice is not given to the world. Notice is not given to the patient, Your Honor. Or to law enforcement or to the sellers of weapons that John Doe 1 and John Doe 2 had a 302. Until that information is put in the PICS system. Well, that's correct, Your Honor. However, the person's status as a citizen is fundamentally changed. So you're saying that- Their rights are terminated. John Doe 3 shows up and he's 302'd, right? Correct, Your Honor. The government can't say at that point, you can't have a gun? Well, while he's physically detained, of course they're not going to give him a gun. And he goes home the next day. No, they can't. That's why he's in a dangerous position. Yes, because he hasn't been adjudicated mentally ill. But wait a minute. If your argument is correct, you're almost making a red tag law argument. I know you know what red tag, the red flag, the red flag law argument. Because what you're saying is once there's a 302, the government could go in and take all their weapons. They could say, okay, you're going home in five days, but we're going with you because if you have any weapons here, we're taking them. That's what your argument essentially is. What my argument essentially is, is you don't have to go all the way there, Your Honor, because under whatever red flag law is ultimately going to look like, ostensibly, it will be a temporary deprivation of that right. Your Honor, I understand that there may be an exigent circumstance which would allow you to have a temporary deprivation of your rights. Section 302, you lose your right of liberty. You lose your right to enter into a contract. You lose your right to First Amendment rights. You lose your Second Amendment rights, but it is temporary. The moment you leave, if you have not had a pre-deprivation hearing, Zinnerman v. Birch is very clear. In the absence of exigency, when you have an established state process that divests someone of a fundamental liberty, you must have the pre-deprivation process. The magnitude of this deprivation, its permanency and its unalterability without any due process of law, means that you must have meaningful due process and it must be prior to that deprivation. To be clear, we're not talking about the detention of the person for purposes of mental health evaluation. We are talking about the collateral and permanent consequence of an unrestorable loss of Second Amendment rights under Birch and Vindorup. Thank you, Your Honor. Thank you. Ms. Tesoro, how are you? I'm fine, Your Honor. Thank you. May it please the Court, my name is Claudia Tesoro. I'm from the Attorney General's Office and obviously I'm here on behalf of the Appleese. This is a facial challenge to the section of the statute we've been talking about, 6105C4. Back to Judge Ross' first question. Is this a moot exercise? That crossed my mind also. At least as to these individual plaintiffs, it would seem to be moot because they have the ability to go through the process and get their state and federal rights restored if they go through it. There's a separate question that these individuals didn't even take advantage of the process that exists, which they contended, as I recall in the state proceeding, excuse me, the district court proceeding, that it wasn't sufficient because at best all they could get was their state rights back. That's not really the Commonwealth's fault or Pennsylvania legislature's fault, but now the federal government has decided that somebody who succeeds through that process can get their federal rights. So I think mootness is a tricky issue. I have nothing else. The recent U.S. Supreme Court debate about the New York case tells us that it's not totally black and white. But I tend to agree that I'm not sure what these people are complaining about anymore since they got de facto from ATF what they said was missing. And if that means it's moot, then it's moot. Well, I think counsel's made it pretty clear that it is a constitutional objection to the protocol, because you don't have a pre-deprivation right to a hearing. They did say, Mr. Porter did say that, but I have a... He never said that. Oh, I know. I heard him, but I was a little bit surprised that he was saying that he was challenging the 302 reference at all, because throughout their papers below and in this court, they have made it clear they're not challenging the Mental Health Procedures Act and they're not challenging their own 302s. So if they're not challenging their own 302s or the statute as a whole, only the Uniform Firearms Act, and the problem that they identified has been resolved, then we only have to look or we only can look at the facial validity or invalidity of the provision of the Uniform Firearms Act. Mr. Serra, one question I wanted to ask you. The commissioner argues that the district court erred in holding that John Doe has asserted a protected liberty interest. Do you still maintain that position? Well, I think that, frankly, after Beers, I maintain it more than I maintained it before. But Beers was a case that also involved 303s and 304s. There was an adjudication in Beers. There's no adjudication with a 302. I think what the focus should be on is the language in Heller and McDonald themselves, which talked about the presumptively valid restrictions on felons and the mentally ill without elaborating on what that meant. The fact that it doesn't elaborate, I suppose my learned opponent would say, means it's meaningless at this point. But I think, in light of the historical references that are mentioned in Beers, and in light of the fact that, in fact, restrictions on the mentally ill are mentioned in the statute that we're talking about here, as opposed to Marzarella, for example, where the business about obliterating the serial numbers was a restriction that was not specifically mentioned in Heller and McDonald. So here we have something that is specifically mentioned, and therefore can be said to be within that category of presumptively valid restrictions. And then we don't have to go any further. Mr. Porter might argue that just because you're 302 doesn't mean that you were adjudicated. But the significance of the word adjudicated is magnified in this conversation because it appears in the federal statute, the federal disqualification statute. But the Pennsylvania statute doesn't contain that word. The Pennsylvania disqualification says, if you've been 302, 303, 304, you are disqualified. But has there really been a historical bar to someone who had a mental or mental or physical diagnosis that they were a threat to themselves or others without any court adjudication whatsoever? I don't think there's an historical precedent for that. Well, I think probably two or three hundred years ago, there were a lot of differences in how a lot of things were done. And the elaborateness of the administrative state and the judicial procedures that exist now was not known for anything. I don't think 1966 you ever had a procedure like the 302s around. I don't remember the date that the Mental Health Procedures Act came into effect. I mean, it was in that era that the 302 was developed under the first Mental Health Procedures Act. Right. But as the Beers case reminds us, there was certainly an awareness in society as a whole that some people were mentally disturbed and were not able to have access to firearms even before, whether it was through the process that we now know as 302 or some other process. Notwithstanding whether they did or if they did, assuming that they did have a protected liberty interest. OK. That moves to the next step. Exactly. And Mr. Porter wants us to, as I heard him today, I heard him espousing an argument that I too thought was broader than what he had written about. He wants to take 302s out of 6105. Right. But isn't there a spot along the way where there could at least be a hearing before one's rights were definitively denied under a 302? Well, I think this is where we get into the general due process analysis and the fact that, as Mr. Porter said, the effectuation of the commitment under the Pennsylvania statute is what triggers the disqualification. And there is no practical way to stop dead in everybody's tracks and have a hearing then because the commitment occurs and the information is reported and the individual who's affected presumably knows, but perhaps doesn't. In any case, it's not even an issue. The person who walks out of the facility, I suppose, who's super duper concerned about his Second Amendment rights might want to assert those rights and apply for relief through the Pennsylvania system that exists to eliminate disqualifications for people who have had them imposed. There are three, as we discuss in our brief, three different avenues, one of which is especially relevant here, where somebody can go through the process. So is it your position that if somebody does that real quickly, they leave the hospital on a Monday and they go pursue their rights on a Tuesday, it's a de facto pre-deprivation? It's not pre, but it's pretty close. A sufficient post-deprivation to satisfy constitutional requirements. Exactly. You don't have to have pre-deprivation process in every single situation where you have to have process. So that if we have recognized, or to the extent that we have recognized that a constitutional right, a liberty interest is at stake here, it does not follow that pre-deprivation procedures are essential. Post-deprivation can be acceptable and indeed in many situations, including Matthews itself, the challenged procedure, which was a post-deprivation procedure, was found to be satisfactory given that situation. And our position is that the same is true in this instance. A person, excuse me, has the three different statutory avenues to get basic restoration of rights through 6105F1, which we've talked about to some extent already. There's also a process available to challenge the accuracy of the commitment records. Does the record show at all how much that process is used? You mean as far as statistics? How many times it's used? Does the record in this case show how much that process is used? I'm not sure whether it does or not. And just for completeness, the third is the challenge to the sufficiency of the evidence from the get-go. Right. The second and third processes. I know the first process comes under F1. Yes. The other two are under 6111.1. My question is, does the record in this case show with what frequency those second and third processes are used? No. I don't think so, but I'm not certain. I do recall citing in our brief reported cases where those processes were invoked, so we know that they are indeed used to some extent, but how many, I can't tell you. But the bottom line is, as I said, assuming a constitutional right is at stake here, the processes that exist are adequate, and the main thing that seemed to drive the plaintiff's were not adequate up until recently was, it's meaningless because we can't get our federal rights back. But now that option does exist. So as far as their due process rights, it is impossible to say that this statute is unconstitutional in all its applications, which is the very, very demanding test that must be met for a statute to be considered unconstitutional on its face. We think the judgment should be affirmed unless the court has further questions. Thank you very much. Thank you. Thank you, Your Honor. I'd like to make a few points. The first point is that the 302 process has been applied in the past seven years to over 170,000 Pennsylvania residents who have permanently lost their Second Amendment rights, but were ultimately determined not to be a danger to themselves or others, such that they were never 303'd or 304'd. That's been five days, but not necessarily during those five days. Well, yes, Your Honor. That's correct. Right. Okay. Second, under Zinnerman v. Birch, and this court's decision in Stana, 775F, Second, and 122, when you have an established state procedure and a pre-deprivation hearing of some kind that conforms with due process is practicable, it must be given before the deprivation occurs. Okay. When does the hearing that you want... Well, the hearing... Again, Your Honor, the state's interest is in keeping dangerous people from having guns, correct? It's not just public safety writ large, or else our rights would be meaningless because you could just invoke public safety and sweep the floor. They have to say, they have to make a determination that the person's a danger to themselves or others. That's what the 303 and 304 process did. Okay. My question is, with 302, a physician has made a determination that a person is a danger to himself or to others. And having done that, under Pennsylvania law, that person loses their gun right. Now, where are you saying that this pre-deprivation hearing should occur? It occurs immediately at the termination of the 302. Emergency room? I'm sorry, Your Honor. When? Go ahead. When? Whenever the state decides this person, we believe this person is a danger to themselves or others. So we're going to have a hearing where the burden of proof will be on the state to demonstrate. So you are then saying, at the hospital emergency room, when the physician says, this person will be hospitalized, he is a danger to himself because he has a gun at home and he's going to shoot himself. At that point, there needs to be a hearing. No. At that point, there does need to be a hearing because if you're going to transition from a temporary suspension of all rights due to the exigency of the circumstances, then you must have a hearing when it becomes a permanent deprivation. So on day five. On day five. Well, Your Honor, Pennsylvania knows this is not an exigent circumstance because the legislature gives you 60 days to hand over your firearms after you've been 302'd. You can have any hearing you needed in that time period. And then if the determination of the state meets its burden of proof, its constitutionally required burden of proof to demonstrate that John Doe 3 is in fact a danger to himself or others, that's what 303 or 304 are for. That's why those exist. So that 60 day window would be the time to have this pre-deprivation hearing? Your Honor. Your Honor. I'm not here today to map out the contours of what a hearing would look like to satisfy due process. Because Zinnerman tells us you have to have a hearing beforehand. You must. It's very clear. Now, the other problem with the post-deprivation remedies is the first two are totally illusory. Under NREB NCL, it's very clear that if you're going to expunge your medical records, you don't get to put on evidence. You don't get to really make arguments. The deference is to the treating physician and the burden of proof is on you. That's no due process at all. Just because you get to go stand up and be seen long enough for them to throw the book at you is not due process. The second is simply saying, hey, I was never committed. My records are wrong. Well, the I'm not, you've got the wrong guy is not due process either. But if you're the wrong guy, it is. What's that? If you're the wrong guy. Well, I agree. But we're not talking about people who are the wrong guy. We're talking about people who were certified committable under Section 302. 170,000 plus people and counting. So, who were never 303 or 304. So, the real issue that you have here is the shifting of the burden under this post-deprivation remedy titled by the state is unconstitutional. As the Supreme Court held in Armstrong v. Manzo, 380 U.S. 545, a state mandated process that affords you only post-deprivation relief when it was practicable to provide you pre-deprivation relief and shifts the burden on you. And in this case, to make John Doe 3 demonstrate to whatever evidentiary burden will be required that he is not a danger to himself or others is per se unconstitutional. Let me just go back one step again. So, just to understand your argument correctly. Okay. You're not asking for this pre-deprivation hearing. You're asking us to write out 302. From 6105C4. That's correct. 302. We want 302 to exist. 302 should be applied. If the person is in an exigent mental health situation, they should be. We're saying you can submit them to mental health evaluation. It is the application of the permanent deprivation of Second Amendment rights under 6105C4 that happens instantly. And as the court implicated strongly in Beers and in Binderup, cannot be restored. Legislative grace is not the same thing as restoration of rights. And it can't be compared to the felony restoration process. Because if you are a felon, you have had a trial. You have had due process. You have been adjudicated a criminal. Under 302, no one is adjudicated mentally ill. No one is adjudicated mentally incompetent. Two district courts in Pennsylvania, the districts are uniformed. Section 302 is neither a commitment nor is it an adjudication of mentally ill. For purposes of taking away someone's Second Amendment rights. My time has expired. Thank you, Your Honor. Thank you, sir. Thank you for your engagement and your time. I appreciate it. All counselors. Thanks for your briefing and your argument. We will take this matter under advisement and get back to you. Thank you, Your Honor. Have a good day.